UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ASIF RAZZAQ RAJPUT
(A-Number: 097-864-523),

Petitioner,

v.

TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, et al.,

Respondents.

No. 1:26-cv-02332-KES-EGC (HC)

**FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**

(Doc. 1)

[14-DAY DEADLINE]

## I. INTRODUCTION

Petitioner Asif Razzaq Rajput, a civil immigration detainee proceeding through counsel, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his mandatory immigration detention. (Doc. 1). On July 16, 2026, the undersigned recommended that the petition be denied. (Doc. 17). On August 17, 2026, the assigned District Judge adopted those findings and recommendations in part, sustaining the conclusion that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A), declining to adopt them as to Petitioner's prolonged-detention claim, and referring the matter back to the undersigned for further consideration of that claim. (Doc. 19).

These findings and recommendations address only the prolonged-detention claim. For the reasons below, the undersigned finds that Petitioner's continued detention without an individualized custody determination has become unreasonably prolonged in violation of the Due Process Clause, and recommends that the petition be **GRANTED IN PART** and that Respondents be ordered to provide Petitioner a bond hearing before an immigration judge.

## II. BACKGROUND

Petitioner is a native and citizen of Pakistan who entered the United States without inspection on or about March 15, 2003. (Doc. 8 at 2). His removal proceedings were administratively closed on October 14, 2021, and re-calendared at the request of the Department of Homeland Security ("DHS") on October 16, 2025. (*Id.* at 3).

On September 4, 2025, Petitioner was convicted of a felony violation of California Penal Code section 115. (*Id.*). That same day, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner. (*Id.*). He has remained in ICE custody continuously since September 4, 2025, at the California City Correctional Center. (Doc. 1 at 3; Doc. 8 at 3). As of the date of these findings and recommendations, that period is approximately twelve months. The record does not indicate that Petitioner has received an individualized bond determination by an immigration judge or any other neutral decisionmaker.

On June 30, 2026, the immigration judge denied Petitioner's applications for relief and ordered him removed. (Doc. 18-3 ¶ 5). On or about July 23, 2026, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals ("BIA"), which remains pending. (*Id.* ¶¶ 6, 8).

## III. LEGAL STANDARD

A district court has jurisdiction under 28 U.S.C. § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The Fifth Amendment's Due Process Clause provides that no person shall be "deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law" in removal proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas*, 533 U.S. at 690. At the same time, "[d]etention during removal

proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531.

In *Demore*, the Supreme Court sustained such detention under section 1226(c) on the understanding that it lasts only "for the brief period necessary for [the noncitizen's] removal proceedings," relying on data reflecting detention averaging approximately a month and a half, and approximately four months in the minority of cases involving an appeal to the Board of Immigration Appeals. *Demore*, 538 U.S. at 513, 529-31. As discussed above, *Demore* does not, however, foreclose a Due Process Clause challenge where detention extends well beyond the period the Court contemplated. *See id.* at 532-33 (Kennedy, J., concurring) (a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified").

Under section 1226(c), there is no bright-line rule fixing the point at which detention becomes unreasonable. *See Jennings v. Rodriguez*, 583 U.S. 281, 297-303 (2018); *see also Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *2 (N.D. Cal. Jan. 25, 2019). Where a Due Process Clause challenge is presented, courts evaluate the claim under the balancing framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), weighing the private interest at stake, the risk of erroneous deprivation of that interest, and the Government's interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *Diep v. Wofford*, No. 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal. Feb. 25, 2025). Applying that framework to immigration detention, the Ninth Circuit has identified as relevant the duration of detention to date, the anticipated duration of future detention, delays attributable to either party, and the likelihood that the proceedings will result in a final removal order. *Rodriguez Diaz*, 53 F.4th at 1207-08.

## IV. DISCUSSION

### A. Petitioner Remains Detained Under Section 1226

As a threshold matter, a pending appeal before the Board of Immigration Appeals ("BIA") does not shift the source of detention authority. An order of removal becomes administratively final upon dismissal of an appeal by the BIA or expiration of the time to appeal. 8 C.F.R. § 1241.1; *see* 8 U.S.C. § 1231(a)(1)(B). Because Petitioner's appeal remains pending, no final administrative order has been entered, the removal period has not commenced, and Petitioner's detention

continues under section 1226. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059-62 (9th Cir. 2008). The analysis that follows proceeds on that basis.

**B. Petitioner's Private Liberty Interest Is Substantial**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," and that protection extends to all persons within the United States regardless of immigration status. *Zadvydas*, 533 U.S. at 690, 693. Petitioner's interest in freedom from nearly a year of physical confinement without any individualized hearing weighs heavily. *Rodriguez Diaz*, 53 F.4th at 1207-08.

The weight of that interest is heightened here because the detention is not merely lengthy but entirely unreviewed. Unlike the petitioner in *Rodriguez Diaz*, who received bond hearings and challenged only their sufficiency, Petitioner has received no custody determination of any kind.

**C. The Risk of Erroneous Deprivation Is High and Additional Process Would Reduce It**

Petitioner has been detained approximately twelve months. That period exceeds the five-month detention held constitutionally tolerable in *Demore v. Kim*, 538 U.S. 510, 529-31 (2003). Further, this District has held that, "[i]n general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" *Lopez v. Garland*, 631 F. Supp. 3d 870, 880 (E.D. Cal. 2022) (citation omitted). There is also nothing in the record that suggests Petitioner has engaged in dilatory litigation tactics.

Further, an appeal to the BIA is now pending. BIA appeals routinely take many months, and an adverse decision may be followed by a petition for review. (Doc. 18-3 ¶ 9). While detention is not indefinite in the *Zadvydas* sense, the remaining duration is substantial and not reliably ascertainable. Although the prospect of a final removal order is more concrete now, it does not justify indefinite custody during the appeal that the immigration laws permit Petitioner to take.

Petitioner's predicate offense is also a non-violent document offense. It is a crime involving moral turpitude, as the District Judge has held (Doc. 19 at 2), and the undersigned does not minimize it. However, it involves no violence, no identified victim of physical harm, and no allegation that Petitioner poses a danger to the community. Further, Respondents have identified

none.

Here, the additional safeguard sought, a single individualized bond hearing, is precisely the procedure our system uses to sort detainees who must be held from those who need not be. Petitioner has identified concrete equities bearing on flight risk and danger: he has lived in this country for roughly twenty-five years, supports a family that includes a United States citizen child, and maintains a fixed residence and steady employment as a truck driver. (Doc. 18 at 11). Whether those equities suffice is for the immigration judge in the first instance. Nonetheless, they are substantial enough to warrant a bond hearing. Therefore, on balance, the risk of erroneous deprivation is high and reducible.

**D. The Government's Interest Does Not Outweigh Petitioner's**

The Government's interest "[includes] the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The Government has a strong interest in effecting removal. *Demore*, 538 U.S. at 531. In addition, the Government has a strong interest in protecting the public. But the key Government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him *without a bond hearing*." *Zagal-Alcaraz v. ICE Field Office Dir.*, No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020). Providing a single individualized hearing imposes minimal fiscal and administrative burden, and it does not compel Petitioner's release. If the Government establishes that Petitioner is a danger or a flight risk, his detention will continue. The Government's interest in avoiding that limited process does not outweigh Petitioner's substantial liberty interest after approximately seven months without review. The question of whether continued detention is warranted is committed to the immigration judge.

Weighing the *Mathews* factors, the undersigned concludes that Petitioner's continued detention under section 1226(c), without any individualized bond hearing, has become unreasonably prolonged, and that due process now requires an individualized bond hearing.

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (Doc. 1) be **GRANTED IN PART** as to

Petitioner's prolonged detention claim;

2. Within ten (10) days of any order adopting these findings and recommendations, Respondent be ORDERED to provide Petitioner an individualized bond hearing before an immigration judge. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022) (identifying a bond hearing as the appropriate remedy, rather than release). At the hearing, the Government must establish "by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Id.* (citations omitted). If Respondent fails to provide Petitioner with a bond hearing as required by the Court's order, Petitioner should be immediately released from detention;

3. The petition (Doc. 1) be **DENIED** to the extent any other relief is sought.

These Findings and Recommendation are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **August 26, 2026**

UNITED STATES MAGISTRATE JUDGE